UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ROTEX GLOBAL, LLC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-244 |
| | ) |
| CPI WIRECLOTH & SCREENS, INC., | ) |
| | ) |
|     Defendant. | ) |

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Rotex Global, LLC. ("Rotex"), for its Complaint for Damages and Injunctive Relief against CPI Wirecloth & Screens, Inc. ("CPI"), states:

### NATURE OF THE CASE

1. Rotex and CPI entered into a manufacturing agreement with certain restrictive covenants. CPI has breached and is breaching its covenants, is pursuing Rotex customers it agreed not to solicit, and is misappropriating Rotex trade secrets.

### PARTIES

2. Rotex is a Limited Liability Company (LLC) organized under the laws of Delaware whose principal place of business is in Hamilton County, Ohio.

3. Process Equipment Group, Inc. is the sole member of Rotex.

4. Process Equipment Group, Inc. is organized under the laws of New Jersey and its principle place of business in in Indiana.

5. CPI is a Texas Corporation whose principal place of business is in Pearland, Texas.

## JURISDICTION AND VENUE

6. The amount in controversy is in excess of seventy-five thousand dollars, exclusive of interest and costs.

7. Subject-matter jurisdiction is proper in this Court pursuant to 28 USC § 1332 as diversity of citizenship exists, with Rotex a citizen of the State of Indiana and New Jersey, and CPI a citizen of the State of Texas; the amount in controversy is satisfied.

8. On November 10, 2004, Rotex and CPI signed a manufacturing agreement (the "Agreement"). The Agreement is attached as **Exhibit A**.

9. Under the following provision of the Agreement, CPI consented to submit to the personal jurisdiction of this Court and agreed this Court was the proper venue:

> Any action, suit or proceeding brought by any party to this Agreement relating to or arising out of this Agreement or any other agreement, instrument, certificate or other document delivered pursuant hereto (or the enforcement hereof or thereof) must be brought and prosecuted as to all parties in, and *each of the parties hereby consents to service of process, personal jurisdiction*

> *and venue in, the state and Federal courts of general jurisdiction located in Hamilton County, Ohio.*

*Id* at §16(f) (emphasis added).

10. Under the terms of the Agreement, this Court has personal jurisdiction and venue is proper pursuant to 28 U.S.C. § 1391(b).

## II. Facts Common To All Counts

11. Paragraphs 1-10 are incorporated by reference.

12. Rotex, based in Cincinnati, Ohio, has been in business since 1844, and is a pioneer in the development of dry material screening equipment and technology.

13. The manufacture and distribution of screening equipment is an important part of Rotex's business.

14. CPI is a manufacturer and distributor of wire cloths and screens and operates in Texas and Louisiana.

### A. The Rotex/CPI Manufacturing Agreement

15. On November 10, 2004, Rotex and CPI (collectively the "Parties") entered into an Agreement whereby CPI would manufacture screens for Rotex products using Rotex's specifications and trade secret information (the "Products") and drop ship those screens direct to Rotex customers. (*See* Exhibit A).

16. CPI was represented by counsel during negotiations of the Agreement.

17. The parties selected Ohio law to govern the Agreement.

18. It was and is important to Rotex that CPI not compete in certain ways for a period of years after the termination of the Agreement, so that Rotex would have the ability to continue and grow its screen manufacturing and technology business.

19. It was and is important to Rotex that its confidential trade secret information be protected, including information regarding: (a) the manufacture of screens and screen technology; (b) its customer lists; and (c) its customers and their preferences.

20. Included in the Agreement are restrictive covenants at Section 9 of the Agreement, providing:

> (a) Vendor agrees that during the Term of this Agreement and for a period of five (5) years after the termination of this Agreement, Vendor (i) shall not, directly or indirectly, through an affiliate or otherwise, manufacture, distribute, service or sell products which are competitive with the Products made or distributed by Rotex, or render services in any capacity to, or own any interest as an individual owner, stockholder, partner, member or in any other manner, in any person, firm, corporation, limited liability company, partnership or other entity which is, or engages in, a business that competes with Rotex; and (ii) shall refrain from developing, distributing, selling, or manufacturing any products which are competitive with the Products made or distributed by Rotex that could be manufacturing any products which are competitive with the products made or

4

distributed by Rotex that could be manufactured from the know-how developed during the Term of this Agreement.

\* \* \* \*

(c) During the Term of this Agreement and for a period of two (2) years after termination of this Agreement, Vendor shall not, without the prior written consent of Rotex, which consent shall not be unreasonably denied, directly or indirectly, solicit or initiate contact with any individuals that are customers of Rotex.

*Id* at §9.

21. The restrictive covenants were freely entered into by CPI.

22. The restrictive covenants are valid and enforceable.

23. Prior to and for over nine years after entering into the contracts, CPI never asserted or suggested that the restrictive covenants were invalid or unenforceable.

24. The Agreement also included a Covenant Not to Disclose Confidential Information, which contained a trade secret provision.

25. Under the Covenant Not to Disclose Confidential Information, Defendant agreed that:

> To enable Vendor to manufacture the Products under this Agreement, Rotex shall disclose to Vendor certain information relating to the design and manufacture of the Products, which information is understood by Vendor to be proprietary to Rotex and information of a confidential nature. As used herein, "Confidential Information " means and includes: (i) all know how, technical data, designs, drawings, specifications, catalogs, data sheets, sales and technical bulletins, service manuals, customer

5

> lists, and customer contact information relating to the design, manufacture, or distribution of products, (ii) all other information, whether or not reduced to writing, relating to the design, manufacture or distribution of Products, as well as (iii) any other information relating to the business of Rotex that may be divulged to Vendor that is not generally known in the trade.
>
> (a) During the term of this Agreement and continuing thereafter, Vendor agrees to receive and use its reasonable efforts to maintain the confidentiality of all Confidential Information disclosed to it by Rotex.

*Id* at §8 (emphasis added).

26. The Covenant Not to Disclose Confidential Information was freely entered into by CPI.

27. The Covenant Not to Disclose Confidential Information is valid and enforceable.

28. Prior to and since entering into the contracts, CPI never asserted or suggested that the Covenant Not to Disclose Confidential Information was invalid or unenforceable.

29. Included in the Agreement was an Indemnity and Attorneys' Fees provision.

30. In the Indemnity and Attorneys' Fees provision, CPI agreed to

> fully defend, indemnify and hold harmless Rotex from and against all claims, actions, proceedings, loss, liability, damages, and expense (including attorneys' fees) incurred by Rotex arising out of or related to:

6

> (a) *any breach of [CPI]'s representations, warranties and covenants in this Agreement*, the Purchase Order, or otherwise . . . Vendor's obligations arising under this Section 5 shall survive any termination of this Agreement; and
>
> (d) any actual or alleged infringement of any patent or trade secret used in production of any Product, except to the extent that the process or product alleged to infringe was specified by Rotex for use by Vendor in production of the Product . . . .

*Id* at §5 (emphasis added).

31. The Indemnity and Attorneys' Fees covenant was freely entered into by CPI.

32. The Indemnity and Attorneys' Fees covenant is valid and enforceable.

33. Prior to and since entering into the contracts, CPI never asserted or suggested that the Indemnity and Attorneys' Fees covenant was invalid or unenforceable.

34. The parties entered into an Addendum to the Agreement in 2005 (Exhibit B).

35. The Addendum added several additional provisions and modified the term of the Agreement.

36. The Addendum clarified and enhanced the CPI restrictive covenants, with CPI committing that it would not "solicit, or honor quote requests, for Rotex screens from any customer not listed on the 'grandfather list.'" The "grandfather

list" is a list of 48 prior customers and 9 prior dealers of CPI that CPI committed to gradually transferring to Rotex.

37. CPI further committed to "not supply screens to grandfather customers for any Rotex platform other than Rotex GP (edged rectangular panels) and Rotex Type A (edged panels with grommets) platforms."

### B. The Agreement's Status

38. The Parties entered into the Agreement on November 10, 2004, for an initial term of one year, which was extended by the Addendum to an initial 3-year term.

39. The Agreement automatically renewed each year for an additional one-year term unless either party provides written notice of its intention not to renew at least ninety-days prior to the expiration of a either the initial term or a renewal term. *Id.*

40. On May 15, 2014, CPI wrote Rotex terminating the Agreement.

### C. Rotex's Performance

41. Rotex performed its obligations under the Agreement.

### D. CPI's Breaches Of The Agreement

42. CPI has breached and continues to breach the Agreement.

43. For instance, CPI has been soliciting Rotex customers, contrary to the restrictive covenants of the Agreement and Addendum.

44. Most recently, CPI bid against Rotex on a major project for a substantial customer of Rotex, and has reached the final stage of the selection process to the exclusion of Rotex, resulting in a seven-figure loss in revenue to Rotex.

45. Subject to a reasonable opportunity for investigation and discovery, CPI has misappropriated Rotex confidential and trade secret information.

46. Starting in June of 2014, Rotex has written CPI on multiple occasions reminding CPI of its contractual and legal obligations, and warning CPI not to breach those obligations.

47. Rotex has also repeatedly asked CPI to disclose any prohibited contacts with Rotex customers, but CPI repeatedly delayed, evaded, and avoided responding to Rotex's legitimate inquiries.

48. On January 14, 2016, after persistent inquiries from Rotex, CPI finally admitted that it is, in fact, in the bidding process with the Rotex customer referenced in Paragraph 44 above.

49. CPI's conduct has caused and continues to cause substantial damages to Rotex, including to Rotex's goodwill, intellectual property, and sales. The damage is irreparable.

50. Rotex has incurred and will continue to incur attorneys' fees in protection of its rights, which are recoverable from CPI pursuant to the

9

Indemnity and Attorneys' Fees covenant of the Agreement and pursuant to the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61 *et seq.* ("OUTSA").

## Specific Counts

### A. Count I: Breach of Contract, Restrictive Covenants

51. Rotex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

52. CPI has breached and continues to breach the confidentiality, non-solicitation, and non-competition restrictive covenants of the Agreement and Addendum by its conduct, and is liable for compensatory damages, punitive damages, and attorneys' fees.

53. Accordingly, Rotex requests that judgment be entered against CPI for all damages and fees recoverable, for costs, and that preliminary and permanent injunctive relief be imposed to prevent future breaches and misappropriation.

### B. Count II: Ohio Uniform Trade Secrets Act

54. Rotex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

55. Under OUTSA, CPI has a duty to not misappropriate information it knows or has reason to know is trade secret information.

56. CPI knew or had reason to know that the Confidential Information was trade secret information.

57. Subject to a reasonable opportunity for investigation and discovery, CPI willfully and/or maliciously has violated and continues to violate OUTSA by its conduct.

58. CPI is liable for compensatory damages, liquidated damages, attorneys' fees, and injunctive relief.

59. Accordingly, Rotex requests that judgment be entered against CPI for all damages, liquidated damages, and fees recoverable, plus costs, and that permanent injunctive relief be imposed to prevent future breaches and misappropriation of trade secrets.

### C. Count III: Attorneys' Fees

60. Under the Indemnity and Attorneys' Fees covenant, CPI is liable for attorneys' fees if it violates a covenant of the Agreement.

61. By its conduct, CPI violated the restrictive covenants of the Agreement.

62. Accordingly, judgment should be entered for Rotex's attorneys' fees and expenses.

### D. Count IV: Unjust Enrichment

63. Rotex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

64. CPI received confidential trade secret information of Rotex regarding (a) the manufacture of screens and screen technology, (b) its customer lists, and (c) its customer information

65. CPI agreed that all such confidential information was to be protected, but CPI used that confidential trade secret information in an improper manner not contemplated by Rotex.

66. CPI has failed to compensate Rotex for the use of that confidential trade secret information.

67. As a result, a benefit has been conferred on CPI by Rotex for which benefit Rotex has not been compensated.

68. Under the circumstances, it would be unjust to allow CPI to retain these benefits without compensation to Rotex, and Rotex is entitled to an amount sufficient to compensate it for the benefit conferred upon CPI.

69. Accordingly, judgment should be entered for Rotex awarding Rotex damages.

### E. Tortious Interference with Business Relationship

70. Rotex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

71. Rotex and its customers have business relationships.

72. CPI knew or should have known about the business relationships between Rotex its customers.

73. CPI improperly used confidential trade secret information for the purpose of interfering with the business relationships between Rotex and its customers.

74. CPI's interference was not justified.

75. CPI's interference caused harm to the business relationship between Rotex and its customers.

76. Accordingly, Rotex requests that judgment be entered against CPI for all damages recoverable, punitive damages, costs, and preliminary and permanent injunctive relief.

> Respectfully submitted,
> */s/ John R. Maley*
> John R. Maley (Atty No. 14300-89)
> **BARNES & THORNBURG LLP**
> 11 South Meridian Street
> Indianapolis, Indiana  46204
> Telephone:   (317) 231-7464
> E-Mail:         jmaley@btlaw.com
>
> William A. Nolan
> **BARNES & THORNBURG LLP**
> 41 S. High Street
> Suite 3300
> Columbus, OH 43215-6104
> 614-628-1401
> Bill.nolan@btlaw.com
>
> Attorneys for Plaintiff